## The Employers' Liability Assurance Corporation, Ltd., Appellee, v. A. A. Electric Company, Appellant.

### Gen. No. 40,943.

Heard in the first division of this court for the first district at the October term, 1939. Opinion filed May 20, 1940.

Kriebel & Hubbard and John J. Sherlock, all of Chicago, for appellant.

TELLER, LEVIT, SILVERTRUST & LEVI, of Chicago, for appellee; LEON SILVERTRUST and H. J. GOLDBERGER, both of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action for balance claimed to be due for premium on a workmen's compensation insurance policy, plaintiff made a motion for summary judgment under section 57 of the Civil Practice Act (Smith-Hurd Ann. Stats., ch. 110, § 181, sec. 57 [Jones Ill. Stats. Ann. 104.057] and §§ 259.15, 259.16, Rules of the Supreme Court). The motion was allowed and judgment entered for $2,281.58, from which defendant appeals. The question for decision is whether the court erred in entering summary judgment.

The facts are as follows: Plaintiff is an insurance company, defendant an electrical construction company, each having an office in Chicago. Defendant was under contract to construct some 470 miles of electrical lines underground in two Wisconsin counties. Arthur M. Moysey & Company, insurance brokers in Chicago, through Mr. Leslie Moysey took up with Mr. Moore, an underwriter and special agent in the service of plaintiff company, the matter of procuring for defendant compensation insurance in connection with this work to be done in Wisconsin. Everyone recognized that the Wisconsin law was applicable (Wisconsin Stats. 1937, ch. 205.01-20). The statute provides that the insurance compensation law shall be administered and enforced by the insurance commissioner, who (205.07) shall approve a minimum adequate pure premium for each classification under which workmen's compensation is written. Chapter 205.09 provides that no classification for such insurance shall be effective until approved by the commissioner, and no rules or regulations as to compensation risks filed by any company or by the Rating and Inspection Bureau (created

under 205.12-24) shall be effective until approved by the commissioner. Chapter 205.11 provides for court review upon complaint of any person having a direct interest.

Mr. Leslie Moysey, of Arthur M. Moysey & Company, took up with Mr. Moore of plaintiff company the matter of the proper classification of the risk in connection with this work to be done in Wisconsin. At his suggestion, on June 15, 1936, Moore wrote to the Wisconsin Compensation Rating and Inspection Bureau inquiring as to the code classification which would be applicable. The bureau replied it could not at that time act upon his correspondence because plaintiff was not then ''the carrier of record'' of the risk. December 17, 1936, Moore advised Mr. Moysey that he was preparing a policy for this kind of insurance with the understanding that the classification used was subject to the approval of the Wisconsin bureau, and that he was forwarding the same to the bureau expecting it to be disapproved both as to date and classification. An extended correspondence between plaintiff and the bureau was conducted by Mr. Moore, and this correspondence is attached to his affidavit submitted in support of the motion for summary judgment. The correspondence shows that with the knowledge of Mr. Moysey and using facts as to the nature of defendant's operations in Wisconsin, which were obtained from Mr. Moysey, Moore endeavored to persuade the Wisconsin bureau to accept code No. 7601 instead of code No. 7538 as the proper classification of defendant's operations. The bureau refused to do this.

December 22, 1936, plaintiff issued to defendant its standard workmen's compensation and employers' liability policy covering defendant's operations in Wisconsin. The policy stated that it was to be in full force and effect from December 22, 1936 to December 22, 1937. The policy was No. WC-704227. By its terms, as required by the Wisconsin law, the amount of premium

to be paid was based on the two factors of (1) the classification of the risk, and (2) the total amount of the payroll. The policy provided the classification should be under code No. 7601, on which the rate was $5.37 per $100 of the payroll. The actual payroll expenditure of defendant as established by an audit amounted to $59,-261.93, making the premium (computed under code No. 7601) $3,182.37. This amount was determined and this sum was paid to plaintiff by defendant's check after the expiration of the policy, and the check was received and indorsed as payment in full.

When the policy was issued December 22, 1936, it contained an indorsement No. 1, which expressly provided that it was ''understood and agreed that the rates shown on the Schedule of Policy to which this endorsement is attached, as respects the State of Wisconsin, are subject to change. In the event revisions in rates are promulgated, said rates shall be effective the date specified by the Wisconsin Authorities.''

Clause ''C'' of the policy made provision for inspection of the assured's plant, works, machinery and books during the policy period and for one year after its final expiration. The policy expressly provided it was issued with the agreement that premium rates were subject to changes ''to the extent that such changes are approved or required by the Commissioner of Insurance in accordance with law by reason of (1) any change in the benefit provision of the above cited Compensation Law which becomes effective during the Policy Period, or (2) any revision of manual rates which becomes effective and applicable during the Policy Period, or (3) the promulgation of adjusted rates by the Wisconsin Compensation Rating and Inspection Bureau in accordance with rating plans so approved. Such changes shall become applicable from and after the date specified by the rate making authority. The provisions of this paragraph shall apply to rates expressed in this Policy or any endorsement attached thereto. Such changes, if

any, are to be expressed by further endorsement naming the effective date thereof.''

April 26, 1937, the Wisconsin authorities gave a ''notice of error'' effective as of December 22, 1936, the date upon which the policy was issued. By this notice of error plaintiff was ordered to eliminate code No. 7601 and substitute code No. 7538. Under code No. 7538 the rate was $9.22 per $100 of the payroll and computed at this rate there was an unpaid balance of $2,281.58 due for premium. For this balance with interest from November 28, 1938, the date upon which defendant admitted it had notice, the court rendered judgment, making a total sum of $2,300.60.

Although admitting the classification at the time the policy was issued was merely tentative, it is now contended in behalf of defendant that the classification of the risk could not be changed after the policy had expired and after a final settlement of the premium due had been made. It is urged in this connection that notice to Moysey & Company (the brokers who sold the insurance policy to defendant) of a change in classification was not notice to defendant, the broker not being the agent of the assured for the purpose of accepting notice. The correspondence shows, as a matter of fact, that the letters of Moore to the Wisconsin bureau urging a different classification were made from information as to the nature of the work to be done by defendant, which was furnished by the broker, so that, as a matter of fact, it appears the broker did act as defendant's agent in this respect. Moreover, in construing the law and the contract made thereunder, the main purpose of the law must be kept in view. It is to provide a fund by which injured workmen may receive compensation, and this fund cannot be provided without the collection of an adequate premium on policies issued. We hold, therefore, that neither the expiration of the policy nor the fact that a final settlement had been made for the premium provided for by the policy is de-

terminative or controlling, and that plaintiff was not estopped to change the classification of the risk. *Employers' Liability Assur. Corp., Ltd., of London v. Success-Uncle Sam Cone Co.,* 208 N. Y. S. 510; *Manufacturers Cas. Ins. Co. v. Daison Mfg. Co., Inc.,* 16 Pa. D. & C. 803; *State Workmen's Ins. Fund v. Pitt Lumber Co., Inc.,* 9 Pa. D. & C. 784. The reasons are well stated in 208 N. Y. S. 510, above cited:

"Any other conclusion would nullify the whole theory under which the Workmen's Compensation insurance rates are regulated by the state. It would result in a practice of private rate fixing in conflict with the provision of the State Insurance Law. It would render ineffective the language of the Statute that classifications of risk and premiums relating thereto shall not take effect until they have been approved by the superintendent of insurance. It would encourage a system of rebates and discriminations that would tend to undermine the entire structure of rate-making."

It is urged and one of the affidavits alleges as a conclusion that the classification as made was unreasonable, arbitrary and discriminatory and, therefore, could not legally be made. It is said that in this respect there was an issue of fact which should have been tried. This Wisconsin statute already cited (205.11) provided defendant's remedy if this was true. Defendant did not avail itself of the opportunity to have this wrong righted if it existed. This being the case, it cannot now raise that question in a suit brought upon the policy in an Illinois court. To permit this would obstruct and defeat the purpose for which the statute was enacted.

It is also urged that the change of classification was inoperative because the indorsements did not properly designate the date of it. We do not think the indorsement is ambiguous.

The affidavits fail to disclose any defense to the suit and fail to raise any issue of fact. The court did not err in entering summary judgment. *Diversey Liquidat-*

*ing Corp. v. Neunkirchen,* 370 Ill. 523. The judgment will be affirmed.

*Judgment affirmed.*

O'CONNOR and McSURELY, JJ., concur.