Stella Zegarski, Formerly Known as Stella Wilaszczyk, Appellee, v. Ashland Savings and Loan Association, Formerly King Zygmunt the First Building and Loan Association, Appellant.

Gen. No. 45,678.

Opinion filed April 30, 1952. Rehearing denied May 16, 1952. Released for publication May 20, 1952.

HARVEY L. CAVENDER, of Chicago, for appellant.

KELNER & KELNER, of Chicago, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

This appeal by defendant is from a summary judgment for $9,660 in an action brought by plaintiff against defendant, a building and loan association.

The complaint alleged that plaintiff deposited with the defendant $10,500, which defendant accepted; that defendant paid plaintiff $210 interest earned on the money, and that upon her demand for the repayment of the money, defendant advised plaintiff it had no moneys belonging to her and was not indebted to her.

An answer was filed denying that defendant received the money, or that it paid any interest to her, or that it is indebted in any way to her.

Plaintiff filed her motion for summary judgment supported by her affidavit, in which she alleged that she had withdrawn $10,000 from another building and loan association, evidenced by a check for that amount, which together with $500 in cash she took to the office of defendant, walked up to the window of a cage inside the office, and there found Lillian Beutler; that she told Lillian Beutler she wanted to deposit with the building and loan association the check and $500 in cash; that Beutler took the check, a copy of which is attached to the affidavit as an exhibit, and asked plaintiff to sign her name on the back; that Beutler also took the $500 in cash, and then sat down at a typewriter and typed a certificate, which Beutler signed and handed to plaintiff; that across the top of the paper was printing which read "King Zygmunt The First

Building and Loan Association'' (the name being later changed to Ashland Savings and Loan Association); that Beutler signed the paper and gave it to her and said to come back in six months with it; that in December 1945 plaintiff took the paper with her and again saw Lillian Beutler at the office and told her she came for her interest; that Beutler then gave her $210 in cash and wrote at the bottom of the certificate $210 interest, and told plaintiff to come back in six months; that in June 1946 she again went to the office; that Lillian Beutler was there, and plaintiff brought the same certificate with her and said she had come for her interest; that again Lillian Beutler gave her $210 in cash and endorsed the certificate with that amount, and advised plaintiff to come back again in six months; that again in December 1946 she went to the office and found Lillian Beutler and again Lillian Beutler gave her $210 and endorsed the amount on the certificate; that plaintiff went back in the middle of July 1947, and again saw Lillian Beutler; that Lillian Beutler then took the certificate and said that there was no more room to endorse payments on the certificate; that she gave her $210, took the certificate from plaintiff and promised to mail a new one to plaintiff; that several days later she received by mail a writing, a copy of which was attached to the affidavit, which read:

''To Stella Wilasczcyk or Mae B. Sendra:

This is to certify that I am holding the sum of Ten Thousand Five Hundred ($10,500.00) Dollars deposit left to bear interest at four (4) per cent per annum.

Said sum of Ten Thousand Five Hundred ($10,500.00) Dollars can be had at any time upon presentation of this receipt.

Lillian Beutler'' (signed)

The affidavit further alleges that in September 1947 plaintiff had heard about the building and loan association being in difficulty; that she went to the office of the defendant and took with her the receipt (Exhibit B) and talked to one Albert Beutler, who looked at her Exhibit B and said he could do nothing about it; and that the minutes of the defendant showed that Lillian Beutler was elected custodian for the years 1944 and 1945.

Attached to the affidavit was an excerpt of testimony taken from the discovery deposition of an officer of the defendant, to prove that the minutes of the defendant disclosed the election of Lillian Beutler as custodian.

Defendant countered the motion for summary judgment with an affidavit of one of the officers of the defendant. In that affidavit it was alleged that he was a director of the defendant; that during the year 1945 the first floor of the premises where defendant's business was located was divided for office space consisting of four rooms—a reception room into which two other rooms opened; that there was a door to each of said rooms; that Lillian Beutler had for some time prior thereto and thereafter conducted a general real estate, loan and insurance business on said premises; that her name appeared on the window of said building and was displayed prominently in the reception room; that she rented space to defendant in said premises and received $25 per month as rent; that there were two windows opening into the reception room—one was used by Lillian Beutler for the conduct of her business, and the other was used by defendant; that in addition to the monthly rental paid by defendant, she was paid the sum of $50 per year and designated as custodian; that said sum was paid to her for the purpose of keeping said premises in a proper, fit and clean condition and as defendant's share of the cost of maintenance of the premises occupied by them and

said Beutler; that during the year 1945 and at no time thereafter, up to and including the month of September 1947, was said Lillian Beutler authorized to conduct business for and on behalf of the building and loan association, nor was she authorized to receive or receipt for money on behalf of said association; that the association employed and paid a salary to one Elsie Hensel to work in said office, receive payments of money on behalf of the association, issue passbooks and perform other services; that about the month of August 1947, Beutler disappeared and her whereabouts became unknown; that she absconded and was indebted to many persons for money collected from them; that subsequent to her disappearance she was adjudged a bankrupt by the District Court; that from and prior to 1945 and up to and including her disappearance, she conducted a general real estate, insurance and loan business in the premises referred to; that affiant has no personal knowledge of the transactions between plaintiff and Lillian Beutler; that the name of the plaintiff, or her former name, does not appear as a depositor of any funds with the defendant; that no loan was ever authorized or made to her, and that insofar as the records of the association show, no transaction was ever had with plaintiff; that defendant was not authorized by its charter or by the laws of the State of Illinois to accept money as deposits for any purpose other than the purchase of shares of stock of defendant, or payment on account of stock or loans made by defendant; that defendant did not during the year 1945 or thereafter pay four per cent interest to any person for money, nor was it authorized so to do; that Lillian Beutler was not during the years 1945, 1946, and 1947 an officer of the defendant and was not during said period authorized to receive payment on behalf of defendant or to transact business for or

on its behalf; and that no money was received by defendant and no stock certificate was ever issued to plaintiff by the defendant.

Defendant contends that it was improper for the trial court to consider any evidence appearing in the discovery deposition of the defendant's officer to support the motion for summary judgment, and relies upon *Corcoran v. Morrison Hotel Corp.*, 339 Ill. App. 203, 205, where this court held that a discovery deposition taken under Rule 19 of the Supreme Court and the provisions of the Civil Practice Act may not be used upon the trial of a case except for the purpose of impeachment. The use of evidence contained in a discovery deposition to support a summary judgment has not heretofore been presented to us for our consideration, and we know of no case in this state which decided the question. Because the answering affidavit of the defendant admitted the facts sought to be proved by the discovery deposition, it becomes unnecessary to determine the question presented, and we shall not express any opinion upon the question.

██ It has been repeatedly held that the purpose of a proceeding for a summary judgment is to determine whether or not a defense exists. Where a defense raising an issue of fact as the plaintiff's right to recover is set up, a summary judgment must be denied. To try an issue of fact by affidavits would deprive defendant of his right to a jury trial. *Diversey Liquidating Corp v. Neunkirchen*, 370 Ill. 523; *Barkhausen v. Naugher*, 395 Ill. 562; *Macks v. Macks*, 329 Ill. App. 144; *Searle & Funderburg, Inc. v. Fuhremann Canning Co.*, 340 Ill. App. 643.

██ We are convinced that the affidavit sets up an issue of fact involving the authority of Beutler to receive the money for the defendant and bind the defendant by her actions. A jury would have the right to determine whether, under all the circumstances,

Beutler had any such authority or acted within any apparent scope of authority. There should be a trial upon the issues raised by the pleadings.

Plaintiff relies upon *Gliwa v. Washington Polish Loan & Building Association*, 310 Ill. App. 465, 473, where the motion for summary judgment was sustained. Even a casual reading of the case cited discloses a factual situation not comparable to the instant case.

██ Defendant also filed a motion for summary judgment against plaintiff supported by the same affidavit of defendant's officer. In view of what we have said, we think the court correctly denied defendant's motion.

For the reasons given the judgment is reversed and the cause remanded.

*Reversed and remanded.*

KILEY, P. J. and LEWE, J., concur.